## McClanahan v. Commonwealth.

(Decided January 30, 1923.)

### Appeal from Graves Circuit Court.

1. False Pretenses—Sufficiency of Indictment.—An indictment for ob-
   taining money under false pretenses, which sets out the name of
   the injured party as "Cousins & Co.," without giving the names
   of the firm or alleging it was a corporation, is in that particular
   sufficient under section 128 of the Criminal Code.
2. False Pretenses—Accomplices—Evidence.—Evidence examined and
   held that in this case the question as to whether certain witnesses
   were accomplices should have been submitted to the jury.

HESTER, SEAY & HESTER for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Re-
versing.

In a trial in the Graves circuit court, Aleck McClana-
han was sentenced to imprisonment for one year in the
state penitentiary on the charge of fraudulently obtain-
ing money by false pretenses.

It is insisted that the indictment is bad on demurrer
in setting out the firm name of the party injured, to-wit,
"Cousins & Co.," without alleging that it was a corpora-
tion or saying that it was a partnership firm and giving
the names of the individual members. It is also urged
that as the proof shows that firm to have been a partner-
ship, it does not in this respect conform to the allegations
of the indictment. However, neither of these objections
seems to be well taken. Criminal Code, section 128; Hen-
nessey v. Commonwealth, 88 Ky. 301; Commonwealth
v. Vineyard, 26 Rep. 543.

Appellant further insists that the court erred in fail-
ing to instruct the jury as to the weight to be given the

testimony of accomplices under section 241 of the Criminal Code.

The indictment charges the defendant with the commission of the crime, and in the descriptive part sets out the details thereof with great elaboration, alleging that he had secured a certain written contract that one H. E. Turner had with Cousins & Co., for the sale of Turner's crop of tobacco, and which Turner had theretofore consummated by delivering all of his crop thereunder, that the defendant falsely and fraudulently represented to Cousins & Co. that a load of inferior tobacco belonging to him was a part of the Turner crop and delivered it to them under that contract and received for it the contract price agreed to be paid for the Turner tobacco. It was further alleged that he procured one J. E. Oliver to do this, and that all of the representations, pretenses, statements and tokens alleged were made through him.

It appears in the evidence that H. E. Turner had a contract with Cousins & Co. for the sale of seven acres of the 1921 crop of tobacco, estimated at 7,000 pounds, at the price of fourteen cents a pound for good, and two cents a pound for lugs, and that he finished delivering it in February, 1922.

Some time later appellant asked Turner if he would deliver a load for him (appellant) on that contract and he declined. On Sunday, the last day of April, appellant and Oliver drove out to Turner's residence, a distance of four miles from the town of Mayfield, and there appellant asked Turner for his tobacco contract. Turner went to the house and got it and on his return gave it to him, and appellant asked him if he would not come in on the following day and haul a load of tobacco on it for him, but Turner said that he was busy and suggested that appellant get some one else. There was another party present named Lloyd and appellant made the same request of him, but he also claimed he was busy, and appellant then asked Oliver to do it for him and he agreed.

Appellant then arranged for a wagon and team for the following day, at which time Oliver loaded the wagon. When this was finished appellant handed him the contract wrapped in a note which read: "Give J. E. Oliver the check as my wife is sick and I can't come, H. E. Turner," and told him to give this note and the contract to the parties. Oliver then drove the wagon to Cousin & Co.'s barn and delivered the tobacco, note and contract to their agent, who received the tobacco and weighed it,

asking him if this was all, and he told him that it was, and the agent wrote the word "all" on the contract, and gave him a check payable to H. E. Turner for $182,00, being the proceeds of the tobacco based on the contract price. Oliver took this to appellant and they separated, but met a short time afterward, and appellant asked Oliver if he could endorse H. E. Turner's name on the check. Oliver said that he could but would not. Thereupon appellant endorsed Turner's name and told Oliver to take it to the bank and cash it, which he did, and on his return McClanahan paid him $5.00 for his services in the matter.

Some days afterward the transaction was discovered and in discussing the matter with a member of the Cousins firm appellant denied that he owned the tobacco delivered, and claimed that all he knew about it was he went to the Turner residence with a stranger who secured the Turner contract, and that he received $5.00 for carrying him out there.

There was some other minor evidence sufficient to corroborate the evidence of Turner and Oliver, if they are to be regarded as accomplices, hence the court did not err in submitting the case to the jury.

Referring to the subject of accomplices, appellant did not testify, but Turner and Oliver did. Turner admits that he had a good idea what appellant wanted with the contract, and the evidence is clear that he did. Oliver states that Turner authorized appellant to sign any necessary papers, and he thought that he had an interest in the McClanahan tobacco, and was not conscious of any wrongdoing, but there are a number of circumstances connected with the case that might indicate a guilty knowledge on his part.

At any rate under this evidence the jury may have believed that he and Turner were accomplices, and if they did so believe they should have considered their evidence as provided in section 241 of the Criminal Code. A failure to so instruct the jury was error.

In another trial the court will tell the jury, that if they believe from the evidence that the witnesses, H. E. Turner and J. E. Oliver, or either of them, wilfully and knowingly participated or assisted in the alleged fraudulent acts and false statements charged in the indictment, if there were any such, that such conduct on his or their part would constitute each one so doing an accomplice, and that a conviction cannot be had upon the testimony of

an accomplice or accomplices unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show that the offense was committed and the circumstances thereof.

Wherefore, for the reasons indicated, judgment is reversed and remanded for proceedings consistent herewith.